**ASSOCIATED CARRIAGES, INC., Appellant,**

v.

**INTERNATIONAL BANK OF COMMERCE, Appellee.**

No. 04–00–00139–CV.

Court of Appeals of Texas, San Antonio.

Nov. 29, 2000.

Rehearing Overruled Jan. 3, 2001.

---

Erin A. McAuliffe, Craddrock & Rosier, P.L.L.C., San Antonio, for appellant.

Gerald T. Drought, Denise Nixon Bunk, Martin, Drought & Torres, Inc., San Antonio, for appellee.

Sitting: TOM RICKHOFF, ALMA L. LÓPEZ and SARAH B. DUNCAN, Justices.

Opinion by ALMA L. LÓPEZ, Justice.

This appeal arises from a dispute over a cashier's check made payable to a corporation and whether the issuing bank was obligated to cash the check at the holder's request. Whether the bank, the appellee in this appeal, wrongfully refused to cash the check was submitted to a jury and the jury found that the bank did not wrongfully dishonor the check. The holder of the check, the appellant in this appeal, challenges the trial court's judgment by raising various issues. After considering the appellant's issues, we find that no reversible error occurred and affirm the judgment.

## Factual Background

The facts from which the underlying lawsuit arose are not disputed. The appellant, Associated Carriages, Inc., is a family owned and run car dealership. The appellee, International Bank of Commerce (IBC), is a bank chartered and operating in the State of Texas. On November 5, 1997, Debra Farmer, presented a personal check drawn on the account of an IBC customer, and made payable to Associated Carriages, to IBC for payment. Farmer represented herself as the president of Associated Carriages and asked the bank to cash the check. Associated Carriages did not have an IBC account and had never transacted business with IBC. The teller did not cash the check, advising Farmer that the bank did not cash checks made payable to corporations.

The following day, Farmer returned to the bank with her brother, Tom Vela, and presented the same check for payment. Vela represented that he was the president of Associated Carriages. The bank did not cash the check, advising Vela that the bank did not cash checks made payable to corporations. The bank, however, offered to certify the funds and issue a cashier's check to Associated Carriages so Associated Carriages would be assured that the funds would still be available after that time. Vela agreed and the bank charged Vela $10.00 for the cashier's check. The bank, however, did not cash the check at that time.

Associated Carriages filed suit against the bank on the following day. Associated Carriages alleged that IBC violated section 3.411 of the Texas Business and Commerce Code by wrongfully refusing to cash the cashier's check, that IBC acted with negligence, gross negligence, and recklessness when it refused to cash the check, and that IBC breached its contract to hon-

or its check. Associated Carriages further contended it was entitled to actual and exemplary damages. Although the bank cashed the check on November 12, 1997 after Vela presented the check to an investment company, Associated Carriages persisted in its claims. The claims for negligence, gross negligence, failure to cash the check, and exemplary damages were resolved by summary judgment in favor of the bank, but the remaining issues were tried before a jury. The jury determined that the bank did not wrongfully refuse to cash the cashier's check, that the bank had a reasonable doubt about whether the person demanding payment of the check was entitled to enforce the check, and that IBC did not receive notice from Associated Carriages that it would lose money if the check was not paid that day.[1] Associated Carriages challenges the factual sufficiency of each of these findings, and the legal sufficiency of the first two findings, in five issues in this appeal.

## Sufficiency of the Evidence

The court of appeals reviews the legal sufficiency of an adverse answer to a finding on which the party had the burden of proof, by first, examining the record for evidence that supports the finding, ignoring all evidence to the contrary; and then, if the court of appeals finds no evidence to support the jury's answer, the court examines the entire record to determine if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). To review a challenge to the factual sufficiency of the evidence, the court of appeals considers and weighs all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Sterner,* 767 S.W.2d at 690. If after considering all of the evidence, the court determines that the challenged finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the court will sustain the issue, regardless of whether there is some evidence to support it. *Id.*

Associated Carriages relied on section 3.411 of the Texas Business and Commerce Code to sue the bank for wrongfully refusing to cash the cashier's check. That section provides, in pertinent part, "[i]f the obligated bank wrongfully ... refuses to pay a cashier's check or certified check ..., the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages." Recovery is not permitted, however, "if the refusal of the obligated bank to pay occurs because ... the obligated bank has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument...." TEX.BUS. & COM.CODE § 3.411(b) (Vernon 2000). As written, the provision for recovery only applies if the bank's refusal to honor the check was "wrongful." *See id.* § 3.411 UCC. cmt. 3 (stating that subsection b applies only if the refusal to honor the check is wrongful). Thus, if we determine that the evidence is legally and factually sufficient to support the jury's

1. The jury charge read as follows:
   Did *International Bank of Commerce* wrongfully refuse payment of its Cashier Check No. 112339 when the check was presented on behalf of *Associated Carriages, Inc.* on or about November 6, 1997?
   Do you find by a preponderance of the evidence that the refusal to pay the cashier's check by International Bank of Commerce occurred because it had a reasonable doubt whether the person demanding payment was the person entitled to enforce the cashier's check on behalf of Associated Carriages, Inc.?
   Do you find from a preponderance of the evidence that International Bank of Commerce received notice from Associated Carriages, Inc. that it owed money to Mills Motors Company and if that money was not paid that day, Associated Carriages, Inc. would lose money?

finding on the first contested issue—wrongful refusal, we need not address the sufficiency of the second and third contested issues. Because the facts underlying this dispute are not contested, we need only examine the record to determine if the evidence indicates the bank acted wrongfully.

■ The Texas Business and Commerce Code does not define "wrongful" or "wrongfulness," but subsection (c) of section 3.411 indicates that a bank's refusal to cash a check is not wrongful if the bank "has a reasonable doubt [about] whether the person demanding payment is the person entitled to enforce the instrument." *Id.* § 3.411(c)(3). Here, the evidence indicates that the bank's policy of refusing to cash checks made payable to corporations was based on the assumption that a reasonable doubt will always exist about whether a person demanding payment on behalf of a corporation is entitled to enforce the instrument. The bank's expert witness for banking operations perhaps best summarized the reasons for the bank's policy. The expert testified:

> The basic reason for the policy is the bank is responsible to make sure that the funds being paid from one of its customer's accounts to another party—to make sure that they're paid to the right person or the right entity. And because an individual can be recognized with a form of identification, it [a check] can usually be cashed for an individual. But for a business, a business cannot be recognized by the presence of an individual standing in front of a teller. So it's a safety precaution to protect both—well, all three—the bank, the payee of the check and the payer [sic] of the check, to make sure the right person was paid.

The witness went on to explain that the bank cannot determine whether an individual is authorized to cash a check made payable to a corporation from corporate books "because you can't identify whether those documents are current, whether or not that individual has authority. Even though there is a business in that name and that person may be associated with that business, the business may not have granted them the authority to cash those checks." The witness further discussed how a policy of not cashing checks made payable to corporations benefits the payee-corporation because the policy ensures that money intended for the business does not end up in the hands of an unauthorized individual.

The bank's vice-president testified likewise, stating that there was no proof an individual could bring to the bank to prove that he or she was authorized to transact business on behalf of the corporation because a reasonable doubt always existed about whether the person was authorized to act on behalf of the corporation. The bank's assistant cashier and trainer also testified that the bank did not cash checks made out to corporations because there is no way for the bank to know if an individual was authorized to negotiate on behalf of a business. The trainer explained that the policy was designed to protect the bank's customers and to protect the payee on the check.

This evidence indicates that the bank's policy represents sound banking policy designed to protect the very party who is complaining here. No evidence indicates that the bank did anything wrongful. The evidence is, therefore, legally sufficient because it supports the jury's finding that the bank did not wrongfully refuse to cash the cashier's check. Likewise, the evidence is factually sufficient because all the evidence supports the jury's findings. Accordingly, we overrule Associated Carriages's sufficiency issues challenging this finding. Because we find that the evidence is legally and factually sufficient to support the wrongful-refusal finding, we need not consider Associated Carriages's issues addressing the sufficiency of the jury's finding about reasonable doubt or about IBC's notice of damages.

## Expert Witness Testimony about Corporate Law

Associated Carriages also complains about the exclusion of its expert's testimony. Associated Carriages sought to admit the deposition testimony of a law professor as an expert on corporate law. In his deposition, the professor testified about corporate documents, how to determine who is authorized to act on behalf of a corporation, and that based on his review, Associated Carriages' corporate records were adequate to prove that Vela was authorized to transact business on behalf of the corporation. Associated Carriages contends that the exclusion of this testimony caused the rendition of an improper verdict.

The court of appeals reviews the trial court's ruling on the exclusion of evidence under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). The court of appeals will not disturb the trial court's ruling on the exclusion of evidence absent an abuse of discretion. "A trial court abuses its discretion when it acts without regard for any guiding rules or principle." *Id.* at 754. For the trial court to admit the deposition testimony complained about here, the deposition had to contain evidence that was relevant. TEX.R.EVID. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* R. 401. Associated Carriages argues that the deposition testimony was relevant because it would have assisted the jury in resolving the underlying dispute and in answering the questions in the jury charge. However, we fail to see the relevance of the deposition testimony.

Associated Carriages alleged that the bank wrongfully refused to cash the check when it was presented for payment on November 6, 1997. Everyone agrees that the bank refused to cash the check because the check was made payable to a corporation. Everyone agrees that the bank refused to cash the check based on a bank policy that assumed that a reasonable doubt always exists about whether an individual has authority to cash a check made payable to a corporation. Accordingly, the wrongful-refusal question, and the reasonable-doubt question, focused on the bank's defense. Because these issues were the facts of consequence, the professor's testimony was relevant only if it tended to dispel the bank's position that a reasonable doubt always existed about whether an individual had authorization to cash a corporate check, or to show that bank's policy was somehow wrongful. The deposition, however, did not contain any evidence about these issues. Consequently, the deposition was not relevant, and thus was properly excluded. We overrule Associated Carriages' issue challenging the exclusion of the deposition testimony.

### Jury Charge

Associated Carriages also complains the trial judge erred by refusing the definitions it requested for the terms "wrongfully refuses" and "reasonable doubt." The court of appeals reviews a challenge to the jury charge under an abuse of discretion standard. *State v. Saenz*, 967 S.W.2d 910, 916 (Tex.App.—Corpus Christi 1998, pet. denied). For definitions, the court of appeals must determine whether the trial court's refusal to submit a requested definition was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The rules of civil procedure require the trial court to submit instructions and definitions that are proper. TEX.R.CIV.P. 277. A definition is not proper unless it is legally correct. *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 453 (Tex.1978).

Associated Carriages requested that the following definition be included in the jury charge:

In this case, Wrongfully Refuses is defined as the refusal by an issuer of a cashier's check to honor the cashier's check, regardless of whether the cashier's check was issued by mistake, unsupported by consideration, or held by one who was not a holder in due course. A cashier's check is accepted by the issuing bank at the time it is issued, and a bank cannot dishonor a cashier's check.

Associated Carriages drafted the definition based on the Fourteenth Court of Appeals decision in *Arline v. Omnibank*, 894 S.W.2d 76 (Tex.App.—Houston [14th Dist.] 1995, no writ). In that case, the court of appeals considered whether an issuing bank was required to cash a cashier's check that it had issued by mistake. In determining that the bank was required to cash the cashier's check, the court of appeals relied on *Wertz v. Richardson Heights Bank & Trust*, 495 S.W.2d 572 (Tex.1973), where the Supreme Court of Texas stated that a bank's issuance of a cashier's check constituted an agreement by the bank to honor the check as presented. *Arline*, 894 S.W.2d at 79–82. *Wertz*, 495 S.W.2d at 574. In *Wertz*, however, the Supreme Court interpreted a prior version of the Uniform Commercial Code (UCC). *Id.* at 574 (stating that bank's liability on the disputed check is governed by the UCC which was adopted in Texas in 1965 and became effective June 30, 1966). The UCC has since been rewritten and abrogates the rule in *Wertz*. *See* TEX.BUS. & COM.CODE § 3.411(c) (establishing defenses for bank) & § 3.411 State Bar Cmts. (stating rule in *Wertz* is changed). Because the rule in *Wertz* was changed when the UCC was rewritten, the definition that Associated Carriages sought to submit to the jury was no longer a correct statement of law. As a result, the trial court properly denied the definition.

█ Associated Carriages requested that the following instruction be included in the jury charge:

The law further states expenses or consequential damages are not recoverable if the obligated bank has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument. In cases in which the check is made payable to a corporate entity, a bank may only refuse payment until it has been given adequate proof that the person presenting the check is entitled to enforce the check on behalf of the corporate entity.

The trial judge deleted the second sentence of the requested instruction and submitted the first sentence as a modified instruction. While the second sentence is clearly modeled as an example used in the third UCC comment to section 3.411, the sentence is nonetheless a comment on the weight of the evidence. The sentence comments on the weight of the evidence by implying to the jury that the bank was required to review corporate documents to ascertain whether the person presenting the disputed check for payment was authorized to transact business on behalf of Associated Carriages. Because the second sentence commented on the weight of the evidence, the trial judge properly excluded it from the instruction on reasonable doubt. TEX.R.CIV.P. 277 (instructing trial court not to directly comment on weight of the evidence in jury charge). We overrule Associated Carriages' complaints about the jury charge.

### Sanctions

█ In its final issue, Associated Carriages maintains that the trial court abused its discretion by awarding sanctions in the form of the bank's attorney's fees. Associated Carriages argues that the bank failed to meet its burden under Rule 13 of the rules of civil procedure. Rule 13 permits the trial court to impose sanctions upon a party for filing a pleading that is both groundless and either brought in bad faith or for purpose of harassment. TEX.R.CIV.P. 13.

 The rule requires the trial court to state in the sanctions order particulars of any good cause found for imposing sanctions. *Id.* A reviewing court will only set aside an order for sanctions upon a clear showing of abuse of discretion by the trial court. *Thomas v. Thomas,* 917 S.W.2d 425, 432 (Tex.App.—Waco 1996, no writ).

In the instant case, the sanctions order stated:

> Plaintiff's claims were not credible and lacked evidentiary support. Plaintiff alleged malice on the part of International Bank of Commerce and the Court heard no evidence of malice. Plaintiff filed the lawsuit one day after International Bank of Commerce failed to cash the check claiming damages which the testimony showed could not have occurred in a one day time period. Further, Plaintiff claimed the conduct of International Bank caused it to lose its credit and caused damages when the evidence demonstrated that Plaintiff's credit was already seriously damaged prior to the incident with International Bank of Commerce. The Court further finds that Plaintiff brought its claim for the improper purpose of trying to extract money from International Bank of Commerce, based on highly questionable factual and legal theories.

The evidence supports these particulars. Associated Carriages alleged that the bank acted wrongfully, but the record contains no evidence of wrongfulness. Associated Carriages also claimed that it suffered loss of time, loss of business, loss of reputation, loss of interest, and other expenses as a result of the bank's actions, yet no evidence indicates that the bank's refusal to cash the cashier's check caused the company's troubles. Instead, the evidence indicates that Associated Carriages' financial troubles began long before the incident with the bank and that it attempted to use the lawsuit to recoup financial losses that occurred for reasons unrelated to the bank. Under these circumstances, a trial court does not abuse its discretion by sanctioning a plaintiff in the amount of the defendant's attorney's fees. We overrule Associated Carriages' issue concerning sanctions.

Having overruled each of Associated Carriages' issues on appeal, we affirm the judgment of the trial court.